IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BRENDA K. BOLIN, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-097-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Brenda K. Bolin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 24, 1961 and was 49 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a machine operator. Claimant alleges an inability to work beginning April 7, 2008 due to limitations resulting from back and shoulder

problems.

## Procedural History

On April 7, 2008, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 21, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On March 16, 2010, the ALJ issued an unfavorable decision on Claimant's application. On March 2, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a machine operator.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) engaging in an improper analysis at step four; (2) arriving at an RFC which did

not include all of her limitations; and (3) conducting a faulty credibility evaluation.

**Step Four Analysis**

Claimant contends the ALJ failed to substantiate his finding that she could perform her past relevant work. In his decision, the ALJ found Claimant suffered from the severe impairments of chronic lumbar spine pain and chronic right should pain, status post shoulder surgery. (Tr. 12). In his RFC findings, the ALJ determined Claimant could perform light work. In so doing, the ALJ found Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday except Claimant can only occasionally stoop, crouch, crawl, kneel, and balance, occasionally climb stairs but never climb ladders, ropes, or scaffolds, and should only occasionally reach overhead with her right upper extremity. (Tr. 13).

Upon making these findings on limitations, the ALJ determined based primarily upon the testimony of the vocational expert that Claimant could return to her past relevant work as a machine operator. He found Claimant's past work was described in the *Dictionary of Occupational Titles* ("DOT") as light, unskilled work with an svp of 2. (Tr. 18).

The medical record indicates Claimant suffered an injury to her right shoulder in October of 1995 while engaging in employment. She re-injured the shoulder in May of 1996, received steroid injections but eventually returned to work. In September of 1997, Claimant injured her shoulder again resulting in surgery in January of 1999 which included an inferior capsular shift for instability and release of impingement syndrome. (Tr. 272).

On April 24, 2000, Claimant was evaluated by Dr. John Munneke in connection with a worker's compensation case. He found Claimant had tenderness over the acromioclavicular joint and bicipital groove. Moderate crepitus was noted with movement, impingement sign was negative, rotator cuff was stable. Pain was elicited with extremes of movement. Weakness was noted on rotator cuff testing when compared with the contralateral left shoulder. Range of motion of the shoulder revealed flexion to 140 degrees, extension to 30 degrees, abduction to 140 degrees, adduction to 40 degrees, internal rotation to 60 degrees, and external rotation to 50 degrees. (Tr. 273).

In a July 7, 2000 report to the worker's compensation court, a rehabilitation consultant determined Claimant could not return to her past work as a machine operator based upon the medical record and Claimant's current skill level. (Tr. 177). At that time,

Claimant described her work as a packing machine operator to require occasional lifting and/or carrying of objects weighing 50 pounds and frequently 25 pounds, climbing, stooping, bending, crouching, crawling, reaching, gross motor manipulation, finger dexterity, talking, hearing, and visual acuity. She indicated that she performs her job indoors in a warm, dry, and moderately loud environment and is exposed to moving and fixed machinery. Claimant estimated her daily standing requirement to be 8 hours and her daily walking requirement to be approximately 1/4 mile. (Tr. 174).

On August 28, 2003, Claimant was evaluated by Dr. Jeffrey Evans at the Cooper Clinic. Dr. Evans found Claimant continued to note pain in the right shoulder at the extremes of motion and still could raise her arm behind her back as far as she could on the other side. Dr. Evans further noted that Claimant had a full range of motion of the right shoulder except for external rotation at 0 degrees abduction, which was 65 degrees, and internal rotation at 0 degrees abduction. Claimant experienced pain at the endpoints of abduction and forward flexion on the right. Impingement sign was negative bilaterally. The anterior apprehension and posterior apprehension and sulcus test were negative bilaterally. The distal neurovascular examination was normal. Dr. Evans diagnosed Claimant with right shoulder pain, offering that an MRI could be performed

on the shoulder. (Tr. 280).

Claimant underwent a consultative physical examination on July 16, 2008 by Dr. Ronald Schatzman. Claimant's chief complaints were severe back and hip pain. She stated both hips dislocate requiring treatment by a chiropractor to put them back into place. She also reported dislocation of her right shoulder. She had difficulty lifting and reaching with her right arm. (Tr. 208). Dr. Schatzman assessed Claimant with global instability of the right shoulder status post surgery with limitation in range of motion, back pain, and hip pain, diagnosed as dislocation by a chiropractor. (Tr. 210).

On August 11, 2008, a Physical Residual Functional Capacity Assessment form was completed by Dr. Thurma Fiegel on Claimant. Dr. Fiegel found Claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, could stand and/or walk for about 6 hours in an 8 hour workday, could sit about 6 hours in an 8 hour workday, could engage in unlimited pushing and pulling. Dr. Fiegel found Claimant had full motion except lumbar at 70 degrees flexion and 120 degrees forward elevation of the right shoulder. (Tr. 217). Dr. Fiegel further found Claimant could climb, balance, kneel, crouch, and crawl frequently and stoop occasionally. (Tr. 218).

8

At the administrative hearing, Claimant reported she did not take medication because she had no insurance or money. (Tr. 302). She lives with and is supported by her parents. (Tr. 303). She is limited in her ability to household chores and states she has a five pound weight restriction on her hand. (Tr. 304). Claimant stated she could not make a bed, do laundry with her right hand, do yard work or fix her hair with her right hand. (Tr. 305).

An ALJ is required to engage in a three phase evaluation at step four - (1) an assessment of the claimant's residual functional capacity; (2) determine the physical and mental demands of the claimant's past relevant work; and (3) determine the claimant's ability to meet the physical and mental demands of the past relevant work. Winfrey v. Chater, 92 F.3d 1017, 1023-26 (10th Cir. 1996). The ALJ found Claimant's RFC to include light work. (Tr. 13). Despite Claimant's protestations to the contrary, this RFC is supported by the medical record. The only evidence of further restriction is Claimant's testimony of limitation of her right shoulder - limitations no borne out by the medical testing. Indeed, evidence was developed in the record to support Claimant's ability to work at the medium exertional level. (Tr. 217).

The second phase requires an evaluation of the demands of Claimant's past relevant work. The vocational expert classified

Claimant's work as light, unskilled. (Tr. 314-15). This finding was based upon the vocational expert's examination of the requirements of the job as clarified by questioning of Claimant. (Tr. 314). Nothing in the record, other than Claimant's assertions, contradicts the vocational experts findings. Reliance upon this testimony was appropriate in evaluating Claimant's past relevant work. 20 C.F.R. § 416.960(b)(2). The ALJ also found at the third phase that Claimant could perform the demands of her past relevant work based upon the record and the testimony of the vocational expert. (Tr. 18). As a result, this Court finds no error in the ALJ's step four analysis.

### RFC Evaluation

Claimant also contends the ALJ's RFC analysis is flawed. As stated, the ALJ's RFC evaluation was appropriate and is supported by the medical record.

### Credibility Analysis

Claimant asserts the ALJ inappropriately rejected her claims of limitation. The ALJ concluded Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible as they were inconsistent with his RFC assessment. (Tr. 16). The ALJ discussed in detail the inconsistencies in Claimant's statements concerning her daily

activities - inconsistencies which would belie her contentions of limited and repetitive use of her right hand and arm. (Tr. 16-18).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). In this regard, the ALJ made detailed and supported findings in rejecting Claimant's credibility on certain statements concerning her activities.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 27th day of February, 2012.

*signature*

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE